# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| Robert Hopper, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | **FIRST AMENDED CLASS** |
| | ) | **ACTION** |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | (Verified Complaint) |
| v. | ) | Summitted Pursuant to Rule 15(a) |
| | ) | |
| BMO Harris Bank, N.A., and | ) | |
| Dovenmuehle Mortgage, Inc., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, by and through his attorneys, for his Complaint against Defendants upon personal knowledge as to facts and conduct and on information and belief as to all other matters, states and alleges as follows:

## INTRODUCTION

1.      Plaintiff is a senior citizen trying to resolve a dispute regarding the failure of defendant BMO Harris Bank, N.A. (hereinafter "BMO") to properly credit his mortgage payments.

2.      Despite Plaintiff's having lived in the same home for almost 30 years and having made every mortgage payment required under his mortgage contract, BMO is threatening to foreclose on Plaintiff's home while falsely alleging Plaintiff underpaid his June 2020 mortgage payment.

1

3.      Defendant BMO's representatives thereafter illegally harassed Plaintiff while refusing to provide him with even basic information about the alleged underpayment.

4.      Worse yet, Defendant BMO retained Plaintiff's mortgage payment -- refusing to return it and allegedly holding the funds, illegally and against contract, in a "suspense account" on which BMO earned interest on its investment of Plaintiff's funds.

5.      As a direct result of Defendant BMO's unlawful conduct, Plaintiff brings this action in order to enjoin Defendant BMO's unlawful conduct and that of its agents and associated entities and to seek just and proper remedies for his claims.

## STATEMENT OF JURISDICTION AND VENUE

6.      This Court has original subject-matter jurisdiction as well as Federal Question Jurisdiction over this proposed class action pursuant to 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act ("FCRA") and the Class Action Fairness Act ("CAFA").

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff is an adult resident of Hennepin County, Minnesota.

9.      Defendant BMO Harris Bank, N.A., a subsidiary of the Bank of Montreal [Canada] is headquartered at 111 West Monroe Street, Chicago, Illinois 60603-4098. It is a member of the Federal Reserve System and does business in nine states, including Minnesota. Its parent company, Bank of Montreal, has a Registered Office in Minnesota at CT Corporation System Inc., 1010 Dale Street North, Saint Paul, Minnesota 55117-5603.

10. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant BMO conducted business in the State of Minnesota and in the County of Hennepin.

11. Defendant Dovenmuehle Mortgage, Inc. (hereinafter, "Dovenmuehle") is a Delaware corporation that has its corporate headquarters at 1 Corporate Drive – Suite 360, Lake Zurich, Illinois 60047-8945. It has a Registered Office in Minnesota at CT Corporation System Inc., 1010 Dale Street North, Saint Paul, Minnesota 55117-5603.

12. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant Dovenmuehle conducted business in the State of Minnesota and in the County of Hennepin.

## FACTS

13. In August of 1994, Plaintiff purchased a home located at 2455 County Road 24 in Medina, Minnesota.

14. Since that time, Plaintiff has occupied this home as his primary residence.

15. Plaintiff selected a 30-year fixed rate mortgage from National City Bank of Minneapolis, a unit of National City Bancorporation.

16. On August 1, 2001, Marshall & Ilsley Corporation ("M&I") of Milwaukee, Wisconsin purchased National City Bancorporation and renamed the National City Bank offices as M&I branch offices.

17. On December 17, 2010, the Bank of Montreal acquired Marshall & Ilsley Corporation and combined the M&I banking offices with its existing BMO Harris Bank, N.A. operations. Thus it is that BMO Harris Bank, N.A. is a Defendant here.

18.     On information and belief, Defendant BMO Harris Bank, N.A. transferred some financial interest in the loan to Defendant Dovenmuehle prior to July of 2020.

19.     The financial interest in question qualifies Defendant Dovenmuehle as a lender and holder of loan interests.

20.     From September of 1994 until July of 2020, Plaintiff paid his mortgage without incident.

21.     In July of 2020, Plaintiff noticed on his mortgage statement that he had not been credited for his previous month's mortgage payment and that he had been charged a late fee – despite the fact that he had made the mortgage payment.

22.     The statement in question showed that the mortgage payment *had been received*, but was *not* credited.

23.     Plaintiff immediately contacted Defendant BMO via telephone, although it took Plaintiff over an hour to reach a live person with whom to speak.

24.     Plaintiff subsequently contacted Defendant BMO in writing.

25.     Once Defendant BMO was placed on notice by Plaintiff that it had failed to properly credit his payment, Defendant BMO advised that it would undertake an inquiry to determine why this was the case.

26.     Defendant BMO then instructed Plaintiff to send copies of the checks for three months of payments (May, June, and July of 2020) and further advised Plaintiff that he would not be required to make additional payments until this dispute was resolved.

27.     As instructed, Plaintiff sent copies of the requisite checks, front and back.

28.     Plaintiff then withheld the August 2020 mortgage payment, as well as subsequent payments on his mortgage, as instructed by Defendant BMO.

29.     For months, Plaintiff heard nothing from Defendant BMO. Finally, in February of 2021, Plaintiff received a letter from Defendant BMO which stated that it had undertaken an inquiry, but that it had not reached a resolution.

30.     Upon receipt of that letter from Defendant BMO, Plaintiff continued to withhold monthly mortgage payments as he had been instructed to do by Defendant BMO until this dispute had been resolved.

31.     Several more months passed and Plaintiff still heard nothing from Defendant BMO.

32.     At that point, Plaintiff learned from Paula J. Prahl (hereinafter, "Prahl"), his former wife, that she had begun to make her share of the monthly mortgage payment to a company named Dovenmuehle Mortgage, Inc. of Lake Zurich, Illinois.

33.     Plaintiff then contacted Dovenmuehle and explained the circumstances of Defendant BMO's failure to credit his payment, to which Dovenmuehle responded by advising Plaintiff to send copies of his checks – front and back – for three months (May, June, and July of 2020) to Dovenmuehle's research department. Plaintiff so responded (now a second time), sending copies of the three checks, front and back, as instructed.

34.     Again, months passed and Plaintiff heard nothing from Defendant BMO or from Defendant Dovenmuehle. Finally, in May of 2020, Plaintiff received a letter from Defendant BMO which stated that it had completed its inquiry but continued to claim that the payments had not been made – that being despite proof (the evidence of fully negotiated checks by Defendant BMO) that Plaintiff had made his payments.

5

35.     During all of this time, Defendant BMO continued to keep Plaintiff's money and Defendant Dovenmuehle continued to keep Prahl's money – with the payments being neither credited to the mortgage nor returned.

36.     Accordingly, after nearly a year of cooperating with Defendant BMO and Defendant Dovenmuehle, Plaintiff had no satisfaction of his dispute regarding the failure of Defendant BMO and the failure of Defendant Dovenmuehle to credit Plaintiff's payments and no sound explanation why – having made his payments – Defendant BMO and Defendant Dovenmuehle had failed to properly credit them.

37.     On December 9, 2021, Plaintiff filed an official "RESPA Notice of Error/Request for Information" to the Lake Zurich, Illinois postal address printed on the back side of his monthly BMO mortgage statements. (That address turned out to be <u>identical</u> to the corporate headquarters address for Dovenmuehle.)

38.     Plaintiff received a reply dated December 20, 2021 from the Mortgage Servicing division of BMO. Although that reply provided various particulars, it in no way explained how it had transpired that Defendant BMO had placed Plaintiff in such an egregious situation.

39.     Defendant BMO's December 20, 2021 reply specifically stated: "While we can confirm we do have your mortgage document on file, we have not included this document in our response as your question was regarding DMI's [Dovenmuehle's] access to these files, and not the contents themselves." That stance was based on an erroneous premise in that it utterly ignored the breadth and depth of the 37 questions that Plaintiff posed in his RESPA "Notice of Error/Request for Information" filing.

6

40.     Consequently, Plaintiff found it necessary to file a RESPA "Request for Information" letter on February 22, 2022 specifically requesting that Defendant BMO send him the mortgage document that it has withheld. Although BMO replied by a letter dated March 3, 2022 that acknowledged Plaintiff's February 22, 2022 request, Plaintiff still awaits the requested mortgage document.

41.     It is pertinent here that the United States Consumer Financial Protection Bureau (hereinafter, "CFPB") reported on its website as of May 24, 2022 that since January 1, 2019 the CFPB has received 375 complaints against Dovenmuehle specifically regarding conventional home mortgages having issues regarding the payment process.

42.     Plaintiff, having received no satisfaction and no explanation, maintains that this dispute with Defendants BMO and Dovenmuehle has not been satisfactorily resolved and is still pending.

43.     To that end, Plaintiff is continuing to exercise his lawful right to withhold payment of his mortgage until this dispute has been satisfactorily resolved and he has been fully compensated for the damages and losses he has sustained as the result of both Defendants' unlawful actions.

44.     In the intervening period, Defendant BMO and Defendant Dovenmuehle falsely and erroneously reported Plaintiff to credit reporting agencies as delinquent in his home loan obligations and as facing foreclosure.

45.     This devastated Plaintiff's credit rating at the height of the pandemic when his business was in need of short-term capital, resulting in substantial business losses.

46.    Despite requests for reinvestigation, no entity (Defendant BMO, Defendant Dovenmuehle, or credit reporting agencies) did anything to correct the erroneous credit reporting --resulting in Plaintiff's total exclusion from the credit market in the intervening period.

## CLASS ALLEGATIONS

47.    Plaintiff seeks to certify a Class of harmed individuals.

48.    Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(B), (2) and (3) related to Claims One and Two for which monetary, injunctive, and declaratory relief is sought.

49.    This Class is defined as: "All individuals who have made their mortgage payments, but whose payments have not been properly credited by Defendants; and all such individuals who have been charged late fees and been affected by improper and unlawful adverse credit reporting by defendants."

50.    This Class is referred to as the "Improperly Credited Payment" Class.

51.    A class action is the only practicable means by which Plaintiff and unknown members of the "Improperly Credited Payment" Class can challenge Defendants' illegal conduct with respect to their mortgage payments.

52.    As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

53.    **Numerosity:** The exact size of the Class is unknown by Plaintiff at this time; the Class is so numerous, it plainly meets the numerosity requirement, thereby making joinder

impracticable. With regard to Minnesota alone, based upon information and belief, BMO and/or Dovenmuehle holds/hold hundreds of thousands of mortgages in its/their portfolio.

54.     Finally, members of the proposed Class are spread out across the state and country, and include millions of individuals who lack financial resources to bring an independent action or to be joined in this action. Putative members of the Class include millions of people whose home is their largest asset. To lose it, would likely force them into insolvency or, worse, bankruptcy.

55.     **Commonality:** All persons comprising the proposed Class are equally suited in that all individuals are presently subject to Defendants' unlawful conduct regarding failing to properly credit their mortgage payments, otherwise protected under Federal law.

56.     Accordingly, Plaintiff raises claims based on questions of law and fact that are common to, and typical of, the putative Class members he seeks to represent.

57.     Common questions of fact include:

58.     Whether Defendants are failing to properly credit mortgage payments by Plaintiff and by the putative Class members;

59.     Whether Defendants are retaining Plaintiff's and the putative Class members' mortgage payments and are failing to return his/their money;

60.     Whether Defendants have improperly charged Plaintiff and the putative Class late fees;

61.      Whether Defendants have filed false and adverse reports on Plaintiff and the Class to the credit reporting agencies.

62.     The relief sought by Plaintiff is common to all members of the proposed Class.

63.    **Typicality:** The claims of Plaintiff are typical of the claims of the proposed Class as Plaintiff and all members have suffered and will continue to suffer the same direct harm and irreparable injury from the unlawful conduct of Defendants.

64.    This is true because Plaintiff and the proposed Class challenge the same conduct of Defendants, and the Defendants likely will assert similar defenses against Plaintiff and the proposed Class members. Moreover, the answer to whether the Defendants have acted unlawfully with regard to the common questions of fact will determine the success of the claims of the named Plaintiff and every other proposed Class member.

65.    **Adequacy:** Plaintiff will fairly and adequately represent the interests of the proposed Class he seeks to represent.

66.    Plaintiff has no interests separate from, or in conflict with, those of the proposed Class he seeks to represent and seeks no relief other than the monetary, declaratory, and injunctive relief sought on behalf of the entire proposed Class.

67.    **Rule 23(b)(2):** Class action status under Rule 23(b)(2) is appropriate because the Defendants have acted or failed and/or refused to act on grounds that generally apply to the proposed Class, such that preliminary and final monetary, injunctive, and declaratory relief is appropriate and necessary with respect to each member of the Class. Specifically, pursuant to the Fair Credit Reporting Act (hereinafter, "FCRA"), the Defendants have automatically and systematically produced false reports to credit agencies in violation of the FCRA -- without adopting procedures to assure maximum possible accuracy. In actuality, Defendants have adopted procedures to willfully and deliberately misstate information about Plaintiff and

10

individual putative Class members. These acts and omissions are generally and specifically applicable to the proposed Class.

68.     Accordingly, plaintiff seeks a declaration that Defendants have violated the FCRA and an injunction enjoining Defendants from further unlawful conduct against Plaintiff and the putative Class so as to render justice for Plaintiff and the proposed Class.

69.     **Rule 23(g):** Plaintiff respectfully requests that the undersigned shall be appointed as Class Counsel. The undersigned Counsel is well suited to represent the Class, as counsel has extensive experience representing individuals in matters involving complex consumer rights matters in Federal Court and has ample knowledge of the relevant statutory law. Counsel has previously litigated matters against large financial institutions in Federal Court and before the American Arbitration Association. Given such experience, Counsel is knowledgeable in Defendants' unlawful practices and the defenses previously asserted by such financial institutions. Counsel is similarly financially capable of hiring additional subject matter experts and subordinate counsel with extensive experience in class-action litigation. Counsel has the resources, expertise, and experience to prosecute this action.

70.     Plaintiff comes now asking for the following relief:


**First Claim for Relief**

**Request for Declaratory Judgment**

*Minn. Stat. § 555.01*

**Against Defendant BMO and Defendant Dovenmuehle**

71.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.     Plaintiff respectfully requests a Declaratory Judgment that Plaintiff has made all contractually required payments on his mortgage.

**Second Claim for Relief**

**Deceptive Trade Practices**

*Minn. Stat. § 325D.44*

**Against Defendant BMO and Defendant Dovenmuehle**

73.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.     It is a deceptive trade practice and unlawful for a company to "represent…that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" Minn. Stat. § 325D.44.

75.     Defendant BMO, by and through its employees, represented to the Plaintiff that they were professionals who would perform the agreed upon mortgage servicing in good faith pursuant to the contract and according the standard of the industry.

76.     It is also a deceptive trade practice and unlawful for a company to "cause…likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another" Minn. Stat. § 325D.44.

77.     Neither Defendant BMO nor Defendant Dovenmuehle disclosed to Plaintiff their close affiliation. In fact, the parties intentionally concealed their affiliation: Defendant BMO used a Dovenmuehle address, when in fact BMO has no employees or corporate presence at the location. This resulted in actual confusion by Plaintiff and, in combination with Defendant BMO's failure to credit payments, caused a genuine belief by Plaintiff that he may have fallen victim to a scam. This deception led the Plaintiff straight to the damages he has suffered.

78.     Specifically, these representations were made within, but not limited to, the aforementioned written and verbal communications including, but again not limited to, the aforementioned letter from Defendants dated December 20, 2021.

79.     This letter although concealed as a writing from BMO was in fact a letter from Defendant Dovenmuehle.

80.     Plaintiff has suffered damages due to these deceptive trade practices including, but not limited to, prolonging the dispute -- causing sleeplessness, anxiety, and fear as would be expected from the prospect of losing one's home after nearly 30 years of timely loan payments.

81.     Plaintiff similarly incurred additional fees and costs including the cost to hire counsel to examine and investigate this matter.

**Third Claim for Relief**

**Breach of Contract**

**Against Defendant BMO**

13

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. A valid contract was formed between Plaintiffs and Defendant BMO.

84. Defendant BMO breached the contract by failing to credit payments pursuant to the agreement -- instead absconding with the funds, refusing to either credit the funds or return the funds.

85. Defendant BMO committed a second breach of contract with respect to Plaintiff's written mortgage contract on the property.

86. Specifically, Defendant BMO willfully breached the Mortgage Security Instrument Contract when Defendant BMO refused to credit Plaintiff's account for mortgage contract payments.

87. Defendant BMO further breached the written mortgage contract by failing to properly allocate payments made on the account.

88. Specifically, Defendant BMO unlawfully and without any authority or justification sent Plaintiff's mortgage payments into a "suspense account" instead of properly allocating the funds pursuant to the mortgage contract.

89. Plaintiff suffered damages as a result of Defendant BMO's breach.


**Fourth Claim for Relief**

**Violation of the Minnesota Homeowners' Bill of Rights**

*Minn. Stat. § 582.043 Et Seq.*

**Against Defendant BMO and Defendant Dovenmuehle**

14

90.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91.     Plaintiff timely notified Defendants BMO and Dovenmuehle of his request to compromise this dispute by requesting a mortgage modification in writing.

92.     Plaintiff has fulfilled the requirement of recording a notice lis pendens with the Hennepin County Recorder – Document Number 11148566.

93.     Plaintiff informed Defendant BMO of his need for a modification due to the excess fees levied by BMO related to its failure to credit his payments and BMO's delay in investigating and responding to Plaintiff's written requests for information.

94.     On information and belief, Defendant BMO passed off its nondelegable duties and sent all paperwork along to Defendant Dovenmuehle, which both ignored certain requests from Plaintiff and responded to others.

95.     Plaintiff again requested a modification in writing in May of 2022.

96.     Again Defendant BMO failed to make any response, instead continuing to attempt foreclosure.

97.     Defendant BMO similarly failed to make any response to requests for information relating to obtaining additional information about modification -- including refusing to provide a copy of Plaintiff's promissory note and mortgage security interest.

98.     Finally, despite repeated requests, Defendant BMO refused to provide a single point of contact for Plaintiff, in direct violation of the herein pled Act.

99.     Defendant BMO further failed to allocate Plaintiff's June 2020 payment in a reasonable manner, and instead allocated the payment in a manner highly likely to cause a deficiency in Plaintiff's account – causing Plaintiff to incur erroneous penalties and late fees.

100.     After repeated notice by Plaintiff that Plaintiff questioned the amount due, Defendant BMO made no attempt to review the information provided by Plaintiff and, instead, ignored Plaintiff's requests while misleading him into believing that the matter was being investigated.

101.     In so doing, in all regards pled above Defendant BMO violated Minn. Stat. §582.043, the Minnesota Homeowners' Bill of Rights.

## Fifth Claim for Relief

## Negligent Violations of the Telephone Consumer Protection Act ("TCPA")

### *47 U.S.C. § 227 Et Seq.*

## Against Defendant BMO and Defendant Dovenmuehle

102.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103.     Plaintiff is informed and believes, and thereon alleges, that Defendants BMO and Dovenmuehle made phone calls to Plaintiff's cellular telephone via an "automatic telephone dialing system" (hereinafter "ATDS") as defined by 47 U.S.C. § 227 (a)(1), the Telephone Consumer Protection Act (hereinafter, "TCPA").

16

104.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39)

105.    Defendant BMO and Defendant Dovenmuehle, and at all times mentioned herein, each qualified as a "person" as defined by 47 U.S.C. § 153 (39).

106.    Plaintiff's telephone number is assigned to a "cellular telephone service" as that term is used in 47 U.S.C. § 227 (b)(1)(A)(ii).

107.    On information and belief, BMO and Dovenmuehle utilize an ATDS to collect alleged debts from consumers.

108.    Plaintiff is familiar with ATDS equipment and thereon alleges that BMO and Dovenmuehle called his personal cell phone with ATDS equipment. Plaintiff bases this belief on the following facts:

   a.    A pause or delay accompanied many of these calls, whereby a representative was not immediately available.

   b.    On several occasions Defendant BMO's and Defendant Dovenmuehle's auto-dialing systems would dial Plaintiff; when Plaintiff answered these phone calls a representative was entirely unavailable resulting in a period of dead air (hereinafter "dead air calls").

   c.    On numerous occasions a prerecorded message played advising Plaintiff to make payment.

   d.    On one occasion where a representative of BMO could be reached, the representative admitted to BMO using ATDS equipment, and on one

17

occasion where a representative of Dovenmuehle could be reached, the

representative admitted to Dovenmuehle using similar ATDS equipment.

e.  The equipment was confirmed by the representative to dial "in sequence".

109.  Plaintiff is informed and believes, and therefore alleges, that these telephone calls

constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227

(b)(1)(A)(i).

110.  The calls were made to Plaintiff's cell phone via ATDS without Plaintiff's prior

express consent.

111.  Defendant BMO and Defendant Dovenmuehle placed or caused to be placed these

telephone calls in violation of 47 U.S.C. § 227 (b)(1).

112.  The foregoing acts and omissions of Defendant BMO and Defendant Dovenmuehle

constitute numerous and multiple negligent violations of the TCPA, including but not

limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

113.  As a result of the negligent violations by Defendant BMO and Defendant

Dovenmuehle of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500.00 in

statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

114.  Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the

future.


**Sixth Claim for Relief**

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**("TCPA")**

*47 U.S.C. § 227 Et Seq.*

**Against Defendant BMO and Defendant Dovenmuehle**

115.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116.    The foregoing acts and omissions of Defendant BMO and Defendant Dovenmuehle constitute numerous and multiple knowing and/or willful violations of the Telephone Consumer Protection Act (hereinafter, "TCPA"), including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

117.    As a result of Defendant BMO's and Defendant Dovenmuehle's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**Seventh Claim for Relief**

**Negligent Violations of the Fair Credit Reporting Act ("FCRA")**

*15 U.S.C. §1681, Et Seq.*

**Against Defendant BMO and Defendant Dovenmuehle**

118.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. The foregoing acts and omissions of Defendant BMO and Defendant Dovenmuehle constitute numerous and multiple negligent violations of the Fair Credit Reporting Act (hereinafter, "FCRA") by Defendant BMO and Defendant Dovenmuehle, including, but not limited to, 15 U.S.C. §1681s-2.

120. Defendant BMO's and Defendant Dovemuehle's violations resulted in Defendant BMO and Defendant Dovenmuehle furnishing inaccurate and harmful information about Plaintiff.

**Eighth Claim for Relief**

**Knowing and/or Willful Violations of the Fair Credit Reporting Act**

***15 U.S.C. §1681, Et Seq.***

**Against Defendant BMO and Defendant Dovenmuehle**

121. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

122. The foregoing acts and omissions of Defendant BMO and Defendant Dovenmuehle constitute numerous and multiple knowing and/or willful violations of the FCRA, including but not limited to failing to conduct a reasonable investigation with respect to the disputed information, and/or failing to review all relevant information before reporting back to the national credit reporting agencies, in violation of 15 U.S.C. § 1681s-2.

123.    Defendant BMO's and Defendant Dovenmuehle's violations resulted in Defendant BMO and Defendant Dovenmuehle furnishing and publishing inaccurate and harmful information about Plaintiff.

## Ninth Claim for Relief

### Violations of the Real Estate Settlement Procedures Act ("RESPA")

*12 U.S.C. § 2605, Et Seq.*

### Against Defendant BMO and Defendant Dovenmuehle

124.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

125.    Upon information and belief, Defendant BMO did not undertake a substantive review of Plaintiffs' claims stated in his Qualified Written Requests for information (hereinafter "QWRs").

126.    By failing to provide the name and telephone number of an individual employed by BMO or Dovenmuehle who could provide assistance to Plaintiffs, the servicers/subservicers violated the Real Estate Settlement Procedures Act (hereinafter, "RESPA") at 12 U.S.C. § 2605 (e)(2).

127.    By failing to investigate the merits of Plaintiffs' QWR and explain in writing why the servicers/subservicers believed Plaintiffs' account was correct or why the requested information was unavailable, servicers/subservicers have violated RESPA at 12 U.S.C. § 2605 (e)(2).

21

128.    Upon information and belief, the servicers/subservicers have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

129.    As a result, Plaintiffs suffered actual damages in an amount equal to the time and effort expended, and the expenses accrued in connection with preparing and submitting the QWR, including expenses for preparing, photocopying, sending the QWR via certified mail, and obtaining all copies of the correspondence.

130.    Additionally, Plaintiff has suffered emotional distress due to the failure of Defendant BMO and Defendant Dovenmuehle to provide all of the information requested within the QWR, as Plaintiff became anxious as to the actual loan balance and whether foreclosure would occur.

131.    Due to these violations, the servicers/subservicers are liable to Plaintiff for emotional damages and actual damages to be determined at trial, as well as additional statutory damages in the amount of $1,000 per violation, attorneys' fees, and the costs of this action, pursuant to 12 U.S.C. § 2605(f).

### Tenth Claim for Relief

### Violations of the Truth in Lending Act ("TILA")

### *15 U.S.C. 1601, Et Seq.*

### Against Defendant BMO and Defendant Dovenmuehle

132.    Plaintiff incorporates all preceding paragraphs in this Complaint by reference as though fully written here.

22

133.     Because the servicers/subservicers did not respond to Plaintiff's requests for a payoff balance within seven (7) business days after receiving Plaintiff's written request for such balance, Defendant BMO and Defendant Dovenmuehle violated the Truth in Lending Act (hereinafter, "TILA") at 15 U.S.C. 1639g.

134.     By failing to provide Plaintiff the name, address, and telephone number of the owner of the obligation upon his written request, the servicers violated TILA at 15 U.S.C. § 1641(f)(2).

135.     As a result of these TILA violations, the servicers/subservicers are liable to Plaintiff in the amount of actual damages, statutory damages, attorneys' fees, and costs of this action, pursuant to 15 U.S.C. § 1640(a).

## Jury Demand

136.     Plaintiff hereby demands a trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiff has been damaged by Defendant BMO's and Defendant Dovenmuehle's unlawful and reckless conduct and comes now to seek a remedy in this honorable Court, for both monetary and injunctive relief and by and through his attorney, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant BMO and Defendant Dovenmuehle as follows:

a.     Declaratory Judgment that Plaintiff has paid his mortgage pursuant to the terms of the note and duly withheld payments as necessary and as was his right.

23

b. An order compelling Defendant BMO to remove all funds from any suspense account and apply such monies pursuant to the mortgage contract;

c. Statutory damages;

d. Actual damages;

e. Restitution;

f. Punitive damages;

g. Injunctive relief prohibiting such conduct in the future;

h. Reasonable attorney's fees, litigation expenses, and cost of suit; and

i. Any other relief deemed appropriate by this Honorable Court.

Dated: September 22, 2022

**MADGETT LAW, PLLC**

/s/David J.S. Madgett
David J.S. Madgett (#0390494)
333 South 7th Street, Suite 2450
Minneapolis, MN 55402-2429
(612) 470-6529
dmadgett@madgettlaw.com
ATTORNEY FOR PLAINTIFF

**MADGETT LAW, PLLC**

/s/Douglas E. Klein
Douglas E. Klein (*pro hac vice* pending)
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, CA 90212-2020
(310) 625-9773
douglas.klein@madgettlaw.com
ATTORNEY FOR PLAINTIFF

24